SILVERMAN, Circuit Judge,
dissenting:
Live! From New York! It’s Saturday Night! ... and the scene is the Olympia Restaurant, Chicago, January, 1978. Dan Aykroyd is manning the grill, Bill Murray is working prep, and John Belushi is up front taking orders. A customer, Jane Curtin, walks in and orders two cheeseburgers. Belushi yells to the grill: “Cheez-borger, cheezborger.” Curtin then orders a Coke. Without looking up, Belushi replies: “No Coke. Pepsi.”
Pause it right there.
*1081 Would anyone seriously contend that the diner violated Coke’s trademark by responding to the customer’s order that it doesn’t carry Coke, only Pepsi?
Now, fast-forward to the present. A customer goes online to Amazon.com looking for a certain military-style wristwatch — specifically the “MTM Special Ops” — marketed and manufactured by Plaintiff Multi Time Machine, Inc. The customer types “mtm special ops” in the search box and presses “enter.” Because Amazon does not sell the MTM Special Ops watch, what the search produces is a list, with photographs, of several other brands of military style watches that Amazon does carry, specifically identified by their brand names — Lummox, Chase-Durer, TAWATEC, and Modus — sort of like what happens when you order a Coke, and are clearly told that they only have Pepsi. The particular search results page at issue is displayed below:
*1082 [[Image here]]
MTM brought suit alleging that Amazon’s response to a search for the MTM Special Ops watch on its website is trademark infringement in violation of the Lan-ham Act. MTM contends that Amazon’s search results page creates a likelihood of confusion, even though there is no evidence of any actual confusion and even though the other brands are clearly identified by name and each product is displayed with a photograph. The district court granted summary judgment in favor of Amazon.
*1083 I would affirm. “The core element of trademark infringement” is whether the defendant’s conduct “is likely to confuse customers about the source of the products.” E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1290 (9th Cir.1992). Because Amazon’s search results page clearly labels the name and manufacturer of each product offered for sale and even includes photographs of the items, no reasonably prudent consumer accustomed to shopping online would likely be confused as to the source of the products. Thus, summary judgment of MTM’s trademark claims was proper.
I.
“Although disfavored in trademark infringement cases, summary judgment may be entered when no genuine issue of material fact exists.” Id. Indeed, in several trademark cases, we have concluded that there is no likelihood of confusion as a matter of law, and affirmed the district court’s grant of summary judgment in favor of the defendant. See, e.g., One Indus., LLC v. Jim O’Neal Distrib., 578 F.3d 1154, 1162-65 (9th Cir.2009); M2 Software, Inc. v. Madacy Entm’t, 421 F.3d 1073, 1080-85 (9th Cir.2005); Surfvivor Media, Inc. v. Survivor Prods., 406 F.3d 625, 631-34 (9th Cir.2005).
To prevail on a claim of trademark infringement under the Lanham Act, “a trademark holder must show that the defendant’s use of its trademark ‘is likely to cause confusion, or to cause mistake, or to deceive.’ ” Fortune Dynamic, Inc. v. Victoria’s Secret Stores Brand Mgmt., 618 F.3d 1025, 1030 (9th Cir.2010) (quoting 15 U.S.C. § 1125(a)(l)-(a)(l)(A)). “The test for likelihood of confusion is whether a ‘reasonably prudent consumer’ in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks.” Dreamwerks Prod. Group v. SKG Studio, 142 F.3d 1127, 1129 (9th Cir.1998). “The confusion must ‘be probable, not simply a possibility.’ ” Murray v. Cable NBC, 86 F.3d 858, 861 (9th Cir.1996).
Here, the district court was correct in ruling that there is no likelihood of confusion. Amazon is responding to a customer’s inquiry about a brand it does not carry by doing no more than stating clearly (and showing pictures!) of what brands it does carry. To whatever extent the Sleekcraft factors[1] apply in a case such as this — a merchant responding to a request for a particular brand it does not sell by offering other brands clearly identified as such— the undisputed evidence shows that confusion on the part of the inquiring buyer is not at all likely. Not only are the other brands clearly labeled and accompanied by a photograph, there is no evidence of actual confusion by anyone.
To analyze likelihood of confusion, we utilize the eight-factor test set forth in Sleekcraft.[2] However, “[w]e have long cautioned that applying the Sleekcraft test is not like counting beans.” One Indus., 578 F.3d at 1162; see also Network Automation, Inc. v. Advanced Sys. Concepts, 638 F.3d 1137, 1145 (9th Cir.2011) (“The Sleekcraft factors are intended as an adaptable proxy for consumer confusion, *1084 not a rote checklist.”)- “Some factors are much more important than others, and the relative importance of each individual factor will be case-specific.” Brookfield, 174 F.3d at 1054. Moreover, the Sleekcraft factors are not exhaustive and other variables may come into play depending on the particular facts presented. Network Automation, 638 F.3d at 1145-46. This is particularly true in the Internet context. See Brookfield, 174 F.3d at 1054 (“We must be acutely aware of excessive rigidity when applying the law in the Internet context; emerging technologies require a flexible approach.”). Indeed,- in evaluating claims of trademark infringement in cases involving Internet search engines, we have found particularly important an additional factor that is outside of the Sleekcraft test: “the labeling and appearance of the advertise.ments and the surrounding context on the screen displaying the results page.” Network Automation, 638 F.3d at 1154.
In the present case, the eight-factor Sleekcraft test is not particularly apt. This is not surprising as the Sleekcraft test was developed for a different problem— i.e., for analyzing whether two competing brands’ marks are sufficiently similar to cause consumer confusion. See Sleekcraft, 599 F.2d at 348. Although the present case involves brands that compete with MTM, such as Luminox, Chase-Durer, TAWATEC, and Modus, MTM does not contend that the marks for these competing brands are similar to its trademarks. Rather, MTM argues that the design of Amazon’s search results page creates a likelihood of initial interest confusion because when a customer searches for MTM Special Ops watches on Amazon.com, the search results page displays the search term used — here, “mtm special ops” — followed by a display of numerous watches manufactured by MTM’s competitors and offered for sale by Amazon, without explicitly informing the customer that Amazon does not carry MTM watches.
Thus, the present ease focuses on a different type of confusion than was at issue in Sleekcraft. Here, the confusion is not caused by the design of the competitor’s mark, but by the design of the web page that is displaying the competing marks and offering the competing products for sale. Sleekcraft aside, the ultimate test for determining likelihood of confusion is whether a “reasonably prudent consumer” in the marketplace is likely to be confused as to the origin of the goods. Dreamwerks, 142 F.3d at 1129. Our case can be resolved simply by an evaluation of the web page at issue and the relevant consumer. Cf. Brookfield, 174 F.3d at 1054 (“[I]t is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of the factors.”). Indeed, we have previously noted that “[i]n the keyword advertising context [i.e., where a user performs a search on the internet, and based on the keywords contained in the search, the resulting web page displays certain advertisements containing products or services for sale,] the ‘likelihood of confusion will ultimately turn on what the consumer saw on the screen and reasonably believed, given the context.’ ” Network Automation, 638 F.3d at 1153. In other words, the case will turn on the answers to the following two questions: (1) Who is the relevant reasonable consumer?; and (2) What would he reasonably believe based on what he saw on the screen?
Turning to the first question, we have explained that “[t]he nature of the goods and the type of consumer is highly relevant to determining the likelihood of confusion in the keyword advertising context.” Network Automation, 638 F.3d at 1152. “In evaluating this factor, we consider ‘the typical buyer exercising ordinary caution.’” Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc., 457 F.3d 1062, 1076 (9th Cir.2006) (quoting Sleekcraft, 599 F.2d at 353). “Confusion is less likely where *1085 buyers exercise care and precision in their purchases, such as for expensive or sophisticated items.” Id. Moreover, “the default degree of consumer care is becoming more heightened as the novelty of the Internet evaporates and online commerce becomes commonplace.” Network Automation, 688 F.3d at 1152.
The goods in the present case are expensive. It is undisputed that the watches at issue sell for several hundred dollars. Therefore, the relevant consumer in the present case “is a reasonably prudent consumer accustomed to shopping online.” Toyota Motor Sales, U.S.A., Inc. v. Tabari, 610 F.3d 1171, 1176 (9th Cir.2010).
Turning to the second question, as MTM itself asserts, the labeling and appearance of the products for sale on Amazon’s web page is the most important factor in this case. This is because we have previously noted that clear labeling can eliminate the likelihood of initial interest confusion in cases involving Internet search terms. See, e.g., Playboy Enters. v. Netscape Communs. Corp., 354 F.3d 1020, 1030 n. 44 (9th Cir.2004) (explaining that clear labeling “might eliminate the likelihood of initial interest confusion that exists in this case”); Network Automation, 638 F.3d at 1154 (same). Indeed, MTM itself argues: “The common thread of [the Ninth Circuit’s decisions in Brookfield, Playboy, and Network Automation ] is that liability under the Lanham Act can only be avoided as a matter of law where there is clear labeling to avoid the possibility of confusion — including initial interest confusion— resulting from the use of another’s trademark.” Thus, MTM agrees that summary judgment of its trademark claims is appropriate if there is clear labeling that avoids likely confusion.
Here, the products at issue are clearly labeled by Amazon to avoid any likelihood of initial interest confusion by a reasonably prudent consumer accustomed to online shopping. When a shopper goes to Amazon’s website and searches for a product using MTM’s trademark “mtm special ops,” the resulting page displays several products, all of which are clearly labeled with the product’s name and manufacturer in large, bright, bold letters and includes a photograph of the item. In fact, the manufacturer’s name is listed twice. For example, the first result is “Luminox Men’s 8401 Black Ops Watch by Luminox.” The second result is “Chase-Durer Men’s 246.4BB7-XL-BR Special Forces 1000XL Black Ionic-Plated Underwater Demolition Team Watch by Chase-Durer.” Because Amazon clearly labels each of the products for sale by brand name and model number accompanied by a photograph of the item, it is simply bizarre to suppose that a reasonably prudent .consumer accustomed to online shopping would be confused about the source of the goods.
MTM argues that initial interest confusion might occur because Amazon lists the search term used — here the trademarked phrase “mtm special'ops” — three times at the top of the search page. MTM argues that because Amazon lists the search term “mtm special ops” at the top of the page, a consumer might conclude that the products displayed are types of MTM watches. But, a review of Amazon’s search results page shows that such consumer confusion is highly unlikely. None of these products are labeled with the word “MTM” or the phrase “Special Ops,” let alone the specific phrase “MTM Special Ops.” Further, some of the products are not even watches. The sixth result is a book entitled “Survive!: The Disaster, Crisis and Emergency Handbook by Jerry Ahem.” The tenth result is a book entitled “The Moses Expedition: A Novel by Juan Gómez-Jura-do.” It is perplexing how one could assume that a book entitled “The Moses Expedition” is a type of MTM watch or is *1086 in any way affiliated with MTM watches. It is hard to fathom how a reasonably prudent consumer accustomed to shopping online would view Amazon’s search results page and conclude that the products offered are MTM watches. Some of the products are not even watches! And the watches that are offered for sale are clearly labeled as being manufactured by Lumi-nox, Chase-Durer, TAWATEC, or Mo-dus — not by MTM. It is possible that some dolt somewhere might be confused by the search results page. But, “[ujnreasonable, imprudent and inexperienced web-shoppers are not relevant.” Tabari, 610 F.3d at 1176; see also Network Automation, 638 F.3d at 1153 (“[W]e expect consumers searching for expensive products online to be even more sophisticated.”).
The majority hypothesizes, without any evidence to support it, that a reasonable jury could infer that initial interest confusion is possible here because consumers might view these search results and wonder whether a competitor has acquired MTM or is otherwise affiliated with MTM. There is no evidence in the record that anyone, anywhere, has ever labored under the mistaken impression that Lummox or the other brands offered are in any way, shape, or form affiliated with MTM. Moreover, to establish likelihood of confusion, MTM must show that confusion is likely, not just possible. See Murray, 86 F.3d at 861.
MTM argues that in order to eliminate the likelihood of confusion, Amazon must change its search results page, so that it explains to customers that it does not offer MTM watches for sale before suggesting alternative watches to the customer. “No MTM, Luminox” is essentially what MTM says is required. I disagree. The search results page makes clear to anyone who can read English that Amazon only carries the brands of watches that are clearly and explicitly listed on the web page. The search results page is unambiguous.
In light of the clear labeling Amazon uses on its search results page, no reasonable trier of fact could conclude that Amazon’s search results page would likely confuse a reasonably prudent consumer accustomed to shopping online as to the source of the goods being offered. See Playboy, 354 F.3d at 1030 n. 44 (Clear labeling “might eliminate the likelihood of initial interest confusion that exists in this ease.”); Network Automation, 638 F.3d at 1154 (same). Therefore, summary judgment of MTM’s trademark claims was appropriate.
MTM attempts to argue that summary judgment of its claims is inappropriate because there are numerous factual disputes related to Amazon’s search results page. But, to the extent there are any factual disputes between the parties, none of them are material to the analysis. MTM cannot dispute the fact that the watches at issue all sell for hundreds of dollars. Therefore, as a matter of law, the relevant consumer would be a reasonably prudent consumer accustomed to shopping online. See Tabari 610 F.3d at 1176; Network Automation, 638 F.3d at 1152-53. Further, MTM cannot dispute the contents of the web page at issue. A review of Amazon’s web page shows that each product listed for sale is clearly labeled with the product’s name and manufacturer and a photograph, and none of the products are labeled with MTM’s mark. Thus, the undisputed facts show that it is highly unlikely that a reasonably prudent consumer accustomed to shopping online would be confused as to the source of the goods offered for sale on Amazon’s web page.
It is true that likelihood of confusion is often a question of fact, but not always. In a case such as this, where a court can conclude that the consumer confusion al *1087 leged by the trademark holder is highly unlikely by simply reviewing the product listing/advertisement at issue, summary judgment is appropriate. Cf. M2 Software, 421 F.3d at 1085 (explaining that summary judgment of a trademark claim is appropriate where the plaintiff has failed to present “sufficient evidence to permit a rational trier of fact to find that confusion is ‘probable,’ not merely ‘possible’ ”). Indeed, in the similar context of evaluating allegations of consumer deception when dealing with false advertising claims, we have at least twice concluded— after a review of the label or advertisement at issue — that there was no likelihood of consumer deception as a matter of law because no reasonable consumer could have been deceived by the label/advertisement at issue in the manner alleged by the plaintiff. See, e.g., Davis v. HSBC Bank, 691 F.3d 1152, 1162 (9th Cir.2012); Freeman v. Time, Inc., 68 F.3d 285, 289-90 (9th Cir.1995).
II.
In light of Amazon’s clear labeling of the products it carries, by brand name and model, accompanied by a photograph of the item, no rational trier of fact could possibly find that a reasonably prudent consumer accustomed to online shopping would likely be confused by the Amazon search results. I would hold that the district court correctly granted summary judgment in favor of Amazon, or as John Belushi might have put it, “No reversal. Affirm.”

. The eight-factor test from our decision in AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir.1979), abrogated in part on other grounds as recognized in Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792 (9th Cir.2003).

. The eight Sleekcraft factors are: "1. strength of the mark; 2. proximity of the goods; 3. similarity of the marks; 4. evidence of actual confusion; 5. marketing channels used; 6. type of goods and the degree of care likely to be exercised by the purchaser; 7. defendant’s intent in selecting the mark; and 8. likelihood of expansion of the product lines.” 599 F.2d at 348-49.